**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>          **Plaintiff,**<br><br>   v.<br><br>**ARETE WEALTH MANAGEMENT, LLC, ARETE WEALTH ADVISORS, LLC, JOEY DALE MILLER, JEFFREY SCOTT LARSON, RANDALL SCOTT LARSON, and UNBO CHUNG,**<br><br>          **Defendants.** | **No. 1:25-cv-00616 (LCJ)** |

**DEFENDANT BOB CHUNG'S MEMORANDUM OF LAW IN SUPPORT**
**OF HIS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

David S. Slovick
Charlotte H. Underwood (*pro hac vice*)
BARNES & THORNBURG LLP
390 Madison Ave., 12th Floor
New York, NY 10017
dslovick@btlaw.com
charlotte.underwood@btlaw.com

*Attorneys for Defendant UnBo (Bob) Chung*

## TABLE OF CONTENTS

**Page**

THE COMMISSION'S ALLEGATIONS ...................................................................................... 1

THE COMMISSION'S PLEADING BURDEN ............................................................................ 5

ARGUMENT ................................................................................................................................. 6

I.     The Commission Failed to State a Claim Against Mr. Chung for Aiding and Abetting Violations of Section 206(1) or 206(2) of the Investment Advisers Act .............................. 6

     A.     The Commission failed to adequately allege that Mr. Chung "recklessly disregarded" any other Defendant's primary violations ............................................... 7

     B.     The Commission failed to adequately allege that Mr. Chung "substantially assisted" any other Defendant's primary violations..................................................... 15

II.    The Commission Failed to State a Claim Against Mr. Chung for Aiding and Abetting Violations of Section 206(4) of the Investment Advisers Act and Rule 206(4)-7 Thereunder. ................................................................................................................... 19

CONCLUSION............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*188 LLC v. Trinity Indus., Inc.,*
   300 F.3d 730 (7th Cir. 2002) ..........................................................................................11

*Armstrong v. McAlpin,*
   699 F.2d 79 (2d Cir. 1983)..............................................................................................15

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)......................................................................................................4, 5

*Atkins v. City of Chicago,*
   631 F.3d 823 (7th Cir. 2011) ....................................................................... 5, 6, 14-15, 17

*Bahiraei v. Blinken,*
   717 F. Supp. 3d 726 (N.D. Ill. 2024) ...................................................................... *passim*

*Clarke T. Blizzard,*
   Advisers Act Rel. No. IA-2253, 2004 WL 1416184 (June 23, 2004) ........................ *passim*

*Cochran v. Illinois State Toll Highway Auth.,*
   828 F.3d 597 (7th Cir. 2016) ............................................................................................5

*Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.,*
   602 F.2d 478 (2d Cir. 1979).................................................................................... 18-19

*Howard v. Sec. and Exch. Comm'n,*
   376 F.3d 1136 (D.C. Cir. 2004) ............................................................................. *passim*

*Monetta Fin. Servs. v. Sec. and Exch. Comm'n,*
   390 F.3d 952 (7th Cir. 2004) ................................................................................. *passim*

*Sec. and Exch. Comm'n v. Cedric Kushner Promotions, Inc.,*
   417 F. Supp. 2d 326 (S.D.N.Y. 2006)..............................................................16, 21

*Sec. and Exch. Comm'n v. Nutmeg Grp., LLC,*
   162 F. Supp. 3d 754 (N.D. Ill. 2016) ..................................................................... *passim*

*Sec. and Exch. Comm'n v. Patel,*
   No. 07-cv-39-SM, 2008 WL 782465 (D.N.H. Mar. 24, 2008)................................19

*Sec. and Exch. Comm'n v. Tecumseh Holdings Corp.,*
   No. 03 Civ. 5490 (SAS), 2009 WL 4975263 (S.D.N.Y. Dec. 22, 2009)................19

*Sec. and Exch. Comm'n v. Treadway*,
  430 F. Supp. 2d 293 (S.D.N.Y. 2006) ...................................................................15

*United States v. Betts*,
  99 F.4th 1048 (7th Cir. 2024) .......................................................................15, 17

*Woodard v. Health Ins. All.*,
  No. 23 C 2630, 2024 WL 942629 (N.D. Ill. Mar. 5, 2024) ................................5, 17

**Statutes and Rules**

15 U.S.C. § 80b-6 .......................................................................................................20

15 U.S.C. § 80b-6(1) ....................................................................................................7

15 U.S.C. § 80b-6(2) ....................................................................................................7

15 U.S.C. § 80b-6(4) ..................................................................................................20

15 U.S.C. § 80b-15(a) ................................................................................................13

15 U.S.C. § 80b-15(b) ................................................................................................14

17 C.F.R. § 275.203A-3(a)(1) ................................................................................. 1-2

17 C.F.R. § 275.206(4)-7 ...........................................................................................20

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant UnBo (Bob) Chung submits this Memorandum of Law in Support of his Motion to Dismiss the First Amended Complaint filed against him by Plaintiff United States Securities and Exchange Commission (the "Commission"). (Dkt. No. 61.) Because the Commission's Amended Complaint fails to adequately allege that Mr. Chung violated any provision of the federal securities laws he requests that the Court dismiss Counts Four and Seven of the Amended Complaint with prejudice insofar as they pertain to him.

## THE COMMISSION'S ALLEGATIONS

Of the 381 paragraphs of factual allegations in the Commission's Amended Complaint very few say anything about Bob Chung. Similarly, Mr. Chung is named in only two of the Commission's nine counts (Am. Compl. ¶¶ 360-65, 373-75), neither of which alleges that he participated in any of the primary misconduct the Amended Complaint is based on. The Commission alleges that Mr. Chung acted as an aider and abettor only, which, according to Seventh Circuit case law, necessarily means that the Commission believes he "recklessly disregarded" and "substantially assisted" one of the *other* Defendant's alleged wrongdoing. (*Infra* at 7.) Mr. Chung is not alleged to have solicited investors to purchase the stock of Zona Energy, Inc. ("Zona"), made misstatements to those investors, raised funds for Zona or profited from sales of Zona stock, requested that any of the three registered representative Defendants (the "Adviser Representatives") obtain settlement agreements or liability releases from Arete clients, drafted or reviewed the agreements or releases, or signed off on their contents.[1]

---

[1] The two Arete Defendants, Arete Wealth Management, LLC and Arete Wealth Advisors, LLC, are referred to collectively in this Memorandum as "Arete," unless otherwise indicated. The term "Adviser Representative" as used in this Memorandum does not refer to individuals who were authorized to represent or bind Arete in any legal sense, but rather refers to the definition of "Investment Adviser Representative" found in the Commission's rules under the Investment Advisers Act of 1940. *See* 17 C.F.R. § 275.203A-

In fact, the Amended Complaint affirmatively alleges that the "trading away" activities that form the basis of the Commission's entire case (Am. Compl. ¶¶ 33-43) were intentionally concealed from Arete and its employees, including Mr. Chung. (*Id.* ¶¶ 4, 168-70, 172-77, 199-207, 85, 122-23, 154, 215, 217, 224, 189, 196.) Among other allegations the Commission admits that the Adviser Representatives "Lie[d] in Forms They Submit[ted] to Arete" about whether their activities with Zona "involve[d] Arete customers" (*id.* Point Heading IV. and ¶¶ 202-03), and about whether the Adviser Representatives had received compensation from sales of Zona stock (in both cases the Adviser Representatives told Arete they did not). (*Id.* ¶¶ 204-07, 215, 217.) The Commission also admits that Arete "instructed [the Adviser Representatives] not to introduce this [Zona] security to any Arete clients." (*Id.* ¶ 214.) In the Commission's own words, the alleged misconduct that forms the basis of the Commission's claims against Mr. Chung occurred "without receiving Arete's approval and therefore *not subject to its compliance oversight*[.]" (*Id.* ¶ 1 (emphasis added).)

Instead, the Commission's claims against Mr. Chung are based on his alleged failure to detect others' admittedly concealed misconduct—namely, allegedly false statements made by other Defendants in settlement agreements drafted by lawyers from "an outside law firm" retained by the Adviser Representatives (*id.* ¶ 265), to which neither Mr. Chung nor any Arete entity was a party, and which neither Mr. Chung nor others at Arete signed. (*Id.* ¶¶ 278-79.) According to the Amended Complaint, Mr. Chung's liability is based solely on his alleged "responsib[ility] for reviewing"—but not his actual review of—"the Releases" contained in the settlement agreements, and his alleged "role in shaping"—but not actually drafting or approving—"the contents of the Releases." (*Id.* ¶¶ 267, 272.) The Amended Complaint contains no non-conclusory allegations that

---

3(a)(1). The three individual Adviser Representative Defendants were not employees of Arete and were prohibited by their independent contractor agreements from binding any Arete entity.

Mr. Chung knew or recklessly failed to know of *any* representations in the agreements that would have led him to believe that others made false statements to Arete customers. In fact, the Amended Complaint makes apparent that the Commission does not even understand what its own pleading burden in this case is, incorrectly alleging that mere negligence suffices to state a claim for aiding and abetting against Mr. Chung. (*See, e.g.*, *id.* ¶ 284.) According to both Seventh Circuit and Commission case law, it does not. (*Infra* at 7-10.)

Nor could the Commission plausibly have alleged facts sufficient to state a claim against Mr. Chung given the Amended Complaint's repeated allegations that the underlying misconduct was methodically concealed from Arete. In many instances the Commission's allegations about Mr. Chung's purported awareness of the misconduct contradict themselves, as when the Commission alleges that Mr. Chung both "knew" that Arete's fiduciary duties to its clients *could* not be waived—as a matter of law—and at the same time alleges that he "recklessly disregarded" the fact that they *had* been waived. (Am. Compl. ¶¶ 283-84, 288.) But most important, the Amended Complaint fails to allege that Mr. Chung ever reviewed any of the allegedly misleading settlement agreements that underlie its claims, much less that he was aware of or approved the agreements' contents. In short, the few allegations the Commission is able to make about Mr. Chung fail to demonstrate his reckless disregard or substantial assistance of any other Defendant's allegedly false or misleading statements, and do not even satisfy the Commission's threshold pleading burden under Rule 12(b)(6) of the Federal Rules of Civil Procedure, let alone the much more onerous pleading standard for aiding and abetting claims under the Advisers Act.[2]

---

[2]    Although the Commission alleges that the settlement agreements contained multiple false statements, its aiding and abetting claims against Mr. Chung are based solely on the language of the agreements' liability waiver paragraph. (Am. Compl. ¶¶ 1, 283-88.) In a single, conclusory paragraph the Commission also alleges "Arete Advisors (through the Arete Representatives and Chung)" knew and disregarded that the releases falsely claimed that "the Adviser Representatives were not acting as financial advisers," and "had not recommended investments in Zona." (*Id.* ¶ 13.) However, there are no allegations

The same is true of the Commission's allegations about Mr. Chung's purported involvement in reviewing and updating Arete Wealth Advisors' policies and procedures. While the Commission alleges in conclusory fashion that Arete Wealth Advisors "did not conduct annual reviews of the adequacy of the firm's compliance policies and procedures" and "failed to tailor the firm's compliance manual to accurately describe Arete's business operations" (*id*. ¶¶ 313-14), the Amended Complaint contains no allegations that could satisfy the Commission's burden to show that Mr. Chung "recklessly disregarded" or "substantially assisted" those alleged violations. To the contrary, as with its allegations concerning alleged misstatements in the Adviser Representatives' settlement agreements, the Amended Complaint contains numerous allegations that directly contradict the Commission's claims that Mr. Chung did not review or act to update Arete Wealth Advisors' policies and procedures. For example, the Commission alleges in two conclusory sentences that Mr. Chung and Arete Wealth Advisors "did not conduct annual reviews" of the firm's policies and procedures, and "failed to tailor the firm's compliance manual" (*id*.), but then quotes contemporaneous emails from Arete's "senior director of compliance" establishing that Mr. Chung *did*, in fact, participate in the firm's annual compliance reviews through which Arete Wealth Advisors *did* update the firm's policies and procedures. (*Id*. ¶¶ 309-11.) Again, the contradictory and conclusory allegations the Commission offers to support its claim concerning Mr. Chung's purported aiding and abetting of Arete Wealth Advisors' alleged failure to review

_____

in that paragraph, or anywhere else in the Amended Complaint, to substantiate those assertions insofar as they pertain to Mr. Chung. In fact, the Commission does not even allege that Mr. Chung reviewed or was aware of those two provisions in the settlement agreements. Conclusory allegations such as these do not satisfy the Commission's threshold pleading burden under Federal Rule of Civil Procedure 12(b)(6). *Bahiraei v. Blinken*, 717 F. Supp. 3d 726, 744 (N.D. Ill. 2024) ("Merely making the conclusional assertion that defendants have engaged in" unlawful activity "is plainly insufficient to state a claim for relief.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

and update its policies and procedures do not satisfy the Commission's baseline pleading burden under Rule 12(b)(6), or the much higher pleading standard applicable to its aiding and abetting claims.

## THE COMMISSION'S PLEADING BURDEN

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility" of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011) ("[T]he fact that the allegations undergirding a plaintiff's claim could be true is no longer enough to save it."). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) ("To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.") (internal citations and quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Further, allegations in a complaint that contradict or are contradicted by other allegations do not satisfy the "plausibility standard" set out in *Iqbal* and *Twombly*. "Unexplained contradictory statements are afforded no weight in federal courts." *Woodard v. Health Ins. All.*, No. 23 C 2630, 2024 WL 942629, at *2 (N.D. Ill. Mar. 5, 2024) (citing *Atkins*, 631 F.3d at 831-32). As a result,

this Court is not to assume that factual allegations "contradicted in the complaint itself" are true for the purposes of adjudicating Mr. Chung's Motion to Dismiss. *Atkins*, 631 F.3d at 831-32; *see also Bahiraei v. Blinken*, 717 F. Supp. 3d 726, 737 (N.D. Ill. 2024) ("[A] plaintiff 'can plead himself out of court by pleading facts that show that he has no legal claim[,]' or, put differently, 'when it would be necessary to contradict the complaint in order to prevail on the merits.' ") (quoting *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016)).

Finally, even though Mr. Chung has only been charged with aiding and abetting (as opposed to primary) violations of the federal securities laws, the Commission is still required to adequately plead the elements of each of the primary securities law violations underlying its aiding and abetting claims—even though Mr. Chung is not alleged to have participated in those primary violations. *Monetta Fin. Servs. v. Sec. and Exch. Comm'n*, 390 F.3d 952, 956 (7th Cir. 2004); *Clarke T. Blizzard*, Advisers Act Rel. No. IA-2253, 2004 WL 1416184, at *5 & n.10 (June 23, 2004). In other words, the existence of a primary violation is an element of every aiding and abetting claim; if the Commission cannot adequately plead the existence of the primary securities law violations on which its aiding and abetting claims are based, then it cannot, as a matter of law, adequately state an aiding and abetting claim.[3]

## **ARGUMENT**

### I.     **The Commission Failed to State a Claim Against Mr. Chung for Aiding and Abetting Violations of Section 206(1) or 206(2) of the Investment Advisers Act.**

Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 prohibit investment advisers from employing devices, schemes or artifices to defraud their clients, and from engaging in transactions, practices or courses of business which operate as a fraud or deceit on those clients.

---

[3]     Mr. Chung hereby adopts and incorporates as if fully set forth herein the arguments made in the Motions to Dismiss filed by the other Defendants demonstrating the Commission's failure to adequately allege any of the primary violations alleged in the Amended Complaint.

15 U.S.C. §§ 80b-6(1), (2). To establish a primary violation of Section 206(1), the Commission must demonstrate that a defendant acted recklessly, while a showing of negligence suffices to establish a primary violation of Section 206(2). *See, e.g.*, *Blizzard*, 2004 WL 1416184 at *5 & n.11.

But the elements of a claim for aiding and abetting violations of Sections 206(1) and 206(2), including the mental state requirement, are different from the elements of a primary violation. To state a claim for aiding and abetting any securities law violation the Commission must adequately allege that "(1) there is a primary violation; (2) the aider and abettor generally was aware or knew that his or her actions were part of an overall course of conduct that was improper or illegal; and (3) the aider and abettor substantially assisted the primary violation." *Monetta Fin. Servs.*, 390 F.3d at 956 (internal citations and quotations omitted); *see also Sec. and Exch. Comm'n v. Nutmeg Grp., LLC*, 162 F. Supp. 3d 754, 782 (N.D. Ill. 2016) (same). To satisfy the second element of an aiding and abetting claim (awareness or knowledge) the Commission must, at a minimum, adequately allege that a defendant acted recklessly. *Monetta Fin. Servs.*, 390 F.3d 956; *Nutmeg Grp., LLC*, 162 F. Supp. 3d at 783. The Commission's two aiding and abetting claims against Mr. Chung fail to meet this pleading standard.

### A. The Commission failed to adequately allege that Mr. Chung "recklessly disregarded" any other Defendant's primary violations.

Like the initial version of the Commission's Complaint, the Amended Complaint incorrectly assumes that allegations of mere negligence are sufficient to satisfy the mental state requirement of a claim for aiding and abetting (Am. Compl. ¶ 284), which shows that the Commission still does not understand what its pleading burden in this case is. According to both Seventh Circuit and Commission case law, the Commission's burden to establish the mental state element of an aiding and abetting claim based on primary violations of both Sections 206(1) and 206(2) of the Advisers Act is only satisfied if the Commission can prove "awareness, or reckless

7

disregard, on the part of the aider and abettor of the wrongdoing and of his or her role in furthering it." *Blizzard*, 2004 WL 1416184 at n.10 (rejecting Commission's claims for aiding and abetting violations of Sections 206(1) and 206(2) of the Advisers Act); *see also, e.g.*, *Monetta Fin. Servs.*, 390 F.3d at 956 and n.4 (ruling that the "awareness requirement" of a Commission claim for aiding and abetting violations of Section 206(2) of the Advisers Act requires at least "a finding of recklessness"). For the purposes of the Commission's burden to establish knowledge or awareness, "knowledge or awareness of *the conduct* that turns out to be improper or illegal is not the same as knowledge or awareness of the conduct's *impropriety or illegality*. . . . The latter is what the law requires." *Nutmeg Grp., LLC*, 162 F. Supp. 3d at 783 (emphasis in original) (citing *Monetta Fin. Servs.*, 390 F.3d at 956 and *Howard v. Sec. and Exch. Comm'n*, 376 F.3d 1136, 1142 (D.C. Cir. 2004)).

Given this heightened mental state requirement, "[i]t is not enough that the accused aider and abettor's action or omission is derived from inexcusable neglect," nor is recklessness in the aiding and abetting context "merely a heightened form of ordinary negligence." *Howard*, 376 F.3d at 1143 (cited with approval by the Seventh Circuit in *Monetta Fin. Servs.*, 390 F.3d at 957) (internal citations and quotations omitted). "[A]iding and abetting liability cannot rest on the proposition that a person 'should have known' he was assisting violations of the securities laws." *Id.* (internal citations omitted); *see also Nutmeg Grp., LLC*, 162 F. Supp. 3d at 783 (same) (citing *Howard*, 376 F.3d at 1143). Recklessness will only be established if "the alleged aider and abettor encountered 'red flags,' or 'suspicious events creating reasons for doubt' that should have alerted him to the improper conduct of the primary violator, . . . or if there was a danger . . . so obvious that the actor must have been aware of the danger." *Howard*, 376 F.3d at 1143 (internal citations

and quotations omitted); *see also Monetta Fin. Servs.*, 390 F.3d at 956 (same) (citing *Howard*, 376 F.3d at 1143).

More specifically, in a case like this where the Commission's allegations arise from purported false or misleading written statements, the Commission cannot sustain an aiding and abetting claim based on primary violations of Advisers Act Section 206(1) or 206(2) where the alleged aider and abettor "was not involved in preparing or reviewing" the allegedly false statement and "delivering [it] to clients or explaining its contents." *Blizzard*, 2004 WL 1416184 at *7; *see also, e.g.*, *Monetta Fin. Servs.*, 390 F.3d at 956-57 (holding that the "SEC has not satisfied the awareness requirement" of aiding and abetting a Section 206(2) violation based on a failure to disclose information because it did not establish that the defendant "was aware that disclosure was required"). For example, in *Blizzard*, the Commission's Enforcement Division charged Clarke Blizzard with aiding and abetting his investment adviser-employer's failure to disclose certain conflicts of interest in the adviser's Form ADV. *Blizzard*, 2004 WL 1416184 at *5. The Commission later determined, however, that Blizzard could not be liable for aiding and abetting misstatements in the Form ADV because "[h]e was not involved in preparing or reviewing" it, or "responsible for delivering Form ADV to clients or explaining its contents." *Id*. at *7.

For the same reason, in *Howard v. Securities and Exchange Commission*—a decision the Seventh Circuit relied on to reach its decision in *Monetta*—the D.C. Circuit vacated a Commission order finding that the respondent aided and abetted a primary fraud arising from false and misleading statements in written securities offering documents. *Howard*, 376 F.3d at 1140-41, 1150. After analyzing the meaning of the term "reckless" and the facts supporting the Commission's recklessness allegations, the court determined that the Commission's aiding and abetting claim failed because it did not demonstrate "that [the respondent] was aware of any

9

illegalities in the first offering that had to be disclosed[.]" *Id*. at 1142. Of particular importance to the court's decision was the fact that, even though the respondent "was apprised of developments" with the drafting of the purported misleading offering documents and had "skimmed through" the final versions of them, an outside law firm—not the respondent—had prepared the documents.

> The law firm of Rogers & Wells prepared the offering documents for use in this country. . . . [The respondent] was not involved in the drafting process although he was apprised of developments [and had] skimmed through [the final offering documents] but did not read [them] closely. * * * The facts that Rogers & Wells . . . drafted the documents for the second offering and that Matcovsky conveyed to [the respondent] his and the law firm's approval [of the transactions] constituted powerful evidence that [the respondent's] actions *did not amount to an extreme departure from the standards of ordinary care*."

*Id*. at 1139, 1148 (emphasis added).

As in *Monetta*, *Howard* and *Blizzard*, the Commission has failed to substantiate a claim for aiding and abetting based on Mr. Chung's alleged reckless disregard of the contents of the Adviser Representatives' settlement agreements. The Commission does not allege that Mr. Chung drafted, reviewed or approved the agreements; or that he or any Arete entity were parties to the agreements; and has completely failed to allege any facts to establish that he disregarded—or was ever even presented with—any "red flags" indicating that the Adviser Representatives' settlement agreements contained false or misleading information.

As an initial matter, the Commission does not dispute that neither Arete nor Mr. Chung were parties to the Adviser Representatives' agreements with their clients. Instead, the "Parties" in each of the relevant agreements were expressly defined to include only the individual Adviser Representatives and their respective clients—not Arete, Mr. Chung, or anyone else:[4]

---

[4]      A complete copy of the settlement agreement referenced here is attached as Exhibit A. Although the relevant agreements are all the same in that neither Arete nor Mr. Chung appears in the "Parties" definition or signature blocks of any of them, Mr. Chung will submit additional examples to the Court at its request. The Court is permitted to consider the attached agreement in adjudicating Mr. Chung's Motion to Dismiss because it is expressly referred to in the Amended Complaint and central to the Commission's

<u>**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE**</u>

**NOW**, this __4__ day of May, 2021, _Zachary and Andrea_ ("___███___") on the one hand, and Jeffrey Scott Larson ("Larson") on the other hand, (collectively the "Parties").

And because Arete was not a party to the agreements, the Commission does not and cannot allege that anyone from Arete signed them. (*See* Ex. A at 3; Am. Compl. ¶¶ 278-79.) In addition, by the terms of the releases themselves, Arete did not agree to be released from any liability whatsoever, or to assume any other obligation or perform any other act. The release contained in the agreements runs *exclusively* between the Adviser Representatives and their clients: every settlement agreement provided that the "*INVESTOR, on the one hand, hereby releases* Jeffrey Scott Larson [or other Adviser Representative], Arete Wealth Advisors, LLC, Arete Wealth Management, LLC" and others, while "*Jeffrey Scott Larson, on the other hand, hereby release[s]* INVESTOR . . . ." (Ex. A at 1 (emphasis added).) Arete agreed to nothing. To hide this fact, the Commission's Amended Complaint, like its initial Complaint, provides the Court with an edited version of the release language that omits the release's final—and most important—sentence. (*Compare* Compl. ¶ 255 *and* Am. Compl. ¶ 286 *with* Ex. A at 1-2.)

The undisputed facts that Arete was not a party to and did not sign the settlement agreements, and did not agree to be released from liability by anyone or to perform any other act or assume any other obligation, by themselves refute an indispensable premise of the Commission's fraud claim against Arete—namely, that Arete, as an "investment adviser[]," "contract[ed] to waive the fiduciary duties that [it] owe[d] [its] clients." (Am. Compl. ¶ 283.)

---

claims. *See, e.g.*, *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("[I]t is . . . well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.").

Neither Arete nor Mr. Chung contracted to do *anything* with regard to the Adviser Representatives or their clients. Because no such Arete contract ever existed, Mr. Chung cannot have recklessly disregarded Arete's alleged contractual fiduciary duty waiver, and he therefore cannot be liable for having aided and abetted Arete's alleged disclosure fraud.

Further, as in *Howard*, the Commission affirmatively alleges that Arete's CEO (not Mr. Chung) "demanded that the Adviser Representatives hire and pay for an outside law firm" (not Mr. Chung) "to draft [the] settlement agreements" (*id*. ¶ 265), and repeatedly alleges that the Adviser Representatives concealed from Arete the alleged misconduct reflected in those agreements. (*Id*. ¶¶ 4, 168-70, 172-77, 199-207, 85, 122-23, 154, 215, 217, 224, 189, 196.) Among other allegations the Commission admits that the Adviser Representatives "Lie[d] in Forms They Submit[ted] to Arete" about whether their activities with Zona "involve[d] Arete customers" (*id*. Point Heading IV. and ¶¶ 202-03), and about whether the Adviser Representatives had received compensation from sales of Zona stock (in both cases the Adviser Representatives told Arete they did not). (*Id*. ¶¶ 204-07, 215, 217.) The Commission also admits that Arete "instructed [the Adviser Representatives] not to introduce this [Zona] security to any Arete clients." (*Id*. ¶ 214.) In the Commission's own words, the alleged misconduct that forms the basis of the Commission's claims against Mr. Chung occurred "without receiving Arete's approval and therefore *not subject to its compliance oversight*[.]" (*Id*. ¶ 1 (emphasis added).) And it is highly relevant to the Court's evaluation of Mr. Chung's alleged reckless failure to discover that the settlement agreements purportedly waived "fiduciary duties" that the term "fiduciary" does not even appear in the release provisions of the settlement agreements. (*Id*. ¶ 286 (reproducing the "Mutual Release" language from the settlement agreements).) Taken together, the Commission's allegations not only fail to establish that Mr. Chung "was aware or knew that his . . . actions were part of an overall course of

12

conduct that was improper or illegal," *Monetta Fin. Servs.*, 390 F.3d at 956, they affirmatively establish that he was *un*aware of any alleged misstatements in the agreements—and because he did not draft or review the agreements, *could* not have been aware of them.

Apart from the foregoing pleading deficiencies, the Commission has also failed to demonstrate that Mr. Chung recklessly disregarded the alleged fiduciary duty waiver in the settlement agreements because the Amended Complaint's allegations on this point contradict themselves: the Commission's allegations concerning Mr. Chung's purported knowledge of the legal effect of the relevant waiver language directly refute the Commission's recklessness allegations. In a section of the Amended Complaint titled "The Releases Unlawfully Purport to Release Arete from the Fiduciary Duty It Owed Its Advisory Clients" (Am. Compl. Point Heading VIII.c.) the Commission alleges that "[t]he federal securities laws prohibit investment advisers from contracting to waive the fiduciary duties that they owe their clients" (*id*. ¶ 283), and goes on to allege that Mr. "Chung *knew* or at least recklessly or negligently *disregarded* this prohibition."[5] (*Id*. ¶ 284 (emphasis added).) The Commission has accurately stated the law on fiduciary duty waivers: Section 215 of the Advisers Act, which is titled "Waiver of Compliance as Void," provides that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this title [*i.e.*, the Advisers Act] or with any rule, regulation, or order thereunder shall be void." 15 U.S.C. § 80b-15(a). In turn, an investment adviser's fiduciary duty arises from Section 206 of "this title," *i.e.*, the Advisers Act. *Nutmeg Grp., LLC*, 162 F. Supp. 3d at 778.

However, if Mr. Chung "knew" of but "disregarded" the securities laws' absolute prohibition against "investment advisers . . . contracting to waive" their fiduciary duties, as the

---

[5]      Again, the Commission incorrectly alleges that negligence is sufficient to state a claim for aiding and abetting under the Advisers Act. It is not. (*Supra* at 7-10.)

Commission expressly alleges, it cannot also be true that he was aware that the release language in the settlement agreements could have resulted in a waiver of Arete's fiduciary duties. That is, Mr. Chung could not both have been aware that fiduciary duties are unwaivable *as a matter of law* and, at the same time, "disregarded" the fact that the settlement agreements *waived* those same fiduciary duties. No matter what the agreements purportedly said about the waiver of anyone's fiduciary duties, the Commission's own Amended Complaint alleges that Mr. Chung knew the agreements could not—as a matter of law—have accomplished that waiver.

Similarly, according to the Commission's legal theory, a necessary part of Mr. Chung's alleged awareness of the legal prohibition against fiduciary duty waivers was his understanding that "*every contract*" that contains such a waiver "shall be void"—an absolute legal prohibition imposed by the same "securities law" provision the Commission alleges Mr. Chung was aware of. *See* 15 U.S.C. § 80b-15(b) ("*Every contract* made in violation of any provision of this title [*i.e.*, the Advisers Act] . . . shall be void.") (emphasis added). But this allegation likewise refutes the Commission's other allegation that Mr. Chung knew but disregarded that the Adviser Representatives' contracts with their clients sought to waive Arete Wealth Advisors' fiduciary duties. Mr. Chung could not have been aware that the Adviser Representatives' settlement agreements waived Arete Wealth Advisors' fiduciary duty while simultaneously understanding that any such agreement would be "void"—as a matter of law—the instant it was reduced to a written "contract." Stated in terms of the Commission's pleading burden, self-contradictory allegations like those in the Amended Complaint pertaining to Mr. Chung's knowledge of the legal effect of the waiver provision do not adequately allege that Mr. Chung "was aware or knew that his . . . actions were part of an overall course of conduct that was improper or illegal." *Monetta Fin. Servs.*, 390 F.3d at 956; *see also Atkins*, 631 F.3d at 831-32 (factual allegations "contradicted

in the complaint itself" are insufficient to adequately plead a cause of action under Rule 12(b)(6));

*Blinken*, 717 F. Supp. 3d at 737 (same). In fact, they compel the opposite conclusion: that Mr.

Chung knew that the settlement agreements *could not* have waived Arete's fiduciary duties because

that possibility was foreclosed by the plain language of the Advisers Act itself.

### B. The Commission failed to adequately allege that Mr. Chung "substantially assisted" any other Defendant's primary violations.

In addition to the requirement that it adequately allege recklessness, to state an aiding and

abetting claim the Commission is also required to adequately allege Mr. Chung's "substantial

assistance" of another Defendant's primary securities law violation. *Monetta Fin. Servs.*, 390 F.3d

at 956; *Nutmeg Grp., LLC*, 162 F. Supp. 3d at 782. The substantial assistance element of an aiding

and abetting violation "requires a showing that the aider and abettor proximately caused the harm

to [the victim] on which the primary liability is predicated. . . . Mere awareness does not satisfy

this standard." *Nutmeg Grp., LLC*, 162 F. Supp. 3d at 786 (internal citations omitted); *see also,*

*e.g.*, *Sec. and Exch. Comm'n v. Treadway*, 430 F. Supp. 2d 293, 339 (S.D.N.Y. 2006) ("[M]ere

awareness and approval of the primary violation is insufficient to make out a claim for substantial

assistance.") (citing *Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983)). In turn, for the

Commission to adequately plead proximate cause "the harm alleged must have a sufficiently close

connection to the [allegedly wrongful] conduct, which is evaluated based on whether the harm was

'foreseeable' to a defendant." *United States v. Betts*, 99 F.4th 1048, 1061 (7th Cir. 2024) (internal

citations and quotations omitted).

"Inaction on the part of the alleged aider and abettor ordinarily should not be treated as

substantial assistance, except when it was designed intentionally to aid the primary fraud or it was

in conscious and reckless violation of a duty to act." *Armstrong*, 699 F.2d at 91; *see also, e.g.*,

*Nutmeg Grp., LLC*, 162 F. Supp. 3d at 786 (same) (citing *Armstrong*, 699 F.2d at 92). As a result,

in the context of a Commission fraud case arising from alleged false and misleading statements in written documents, the Commission fails to adequately allege substantial assistance where it is unable to establish that the defendant drafted or reviewed the allegedly misleading document. *See, e.g*, *Blizzard*, 2004 WL 1416184 at *7 (ruling that respondent did not substantially assist a primary disclosure fraud because he "had no involvement in preparing or reviewing any information disclosed in the ADV"); *Sec. and Exch. Comm'n v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 335-37 (S.D.N.Y. 2006) (ruling that defendant did not substantially assist the primary violator's false disclosures in a company's Form 10-KSB because the defendant's "role in the preparation of the Form 10-KSB was very limited").

The Commission has failed to adequately allege that Mr. Chung substantially assisted any other Defendant's primary violation of Advisers Act Sections 206(1) and 206(2) because the Amended Complaint contains no allegations that he had any role whatsoever in drafting or reviewing the Adviser Representatives' settlement agreements. To the contrary, the Commission expressly alleges that the agreements were drafted by lawyers from "an outside law firm" retained by the Adviser Representatives (not Mr. Chung), and the Commission does not dispute that neither Mr. Chung nor Arete was a party to, or signed, the agreements. (Am. Compl. ¶¶ 278-79; *see also* Ex. A at 1-2, 3.) These allegations flatly contradict the Commission's conclusory assertion that Mr. Chung assisted the making of another Defendant's false or misleading written statements, but they also make apparent that he did not participate *at all* in any phase of the creation or review of the documents that allegedly contained those misstatements. The Commission's Amended Complaint fails to plead the proximate cause required by Seventh Circuit case law because it fails to establish "a sufficiently close connection"—or *any* connection—between Mr. Chung's alleged involvement in the Adviser Representatives' settlement agreements and the harm that the Commission alleges

resulted from the agreements. *Betts*, 99 F.4th at 1061. More specifically, because the Commission has not alleged that the relevant harm (*i.e.*, the alleged waiver of Arete's fiduciary duties) was "foreseeable" to Mr. Chung, it has necessarily failed to adequately allege his substantial assistance of any primary violation of the Advisers Act arising from the contents of the Adviser Representatives' settlement agreements. *Id.*; *Nutmeg Grp., LLC*, 162 F. Supp. 3d at 786.

Further, as discussed above, even if the Commission had attempted to allege that the harm it claims was caused by the settlement agreements was foreseeable to Mr. Chung, which it has not, other allegations in the Amended Complaint directly contradict that assertion—for example, the Commission's repeated allegations that the Adviser Representatives' alleged misconduct was systematically concealed from Arete and its employees (Am. Compl. ¶¶ 4, 168-70, 172-77, 199-207, 85, 122-23, 154, 215, 217, 224, 189, 196), and its allegation that Mr. Chung "knew" that Arete *could* not, as a matter of law, have contracted to waive its fiduciary duties. (*Id.* ¶¶ 283-84.) These contradictory allegations make it impossible for the Commission to adequately plead proximate cause, which is a necessary element of both of its aiding and abetting claims against Mr. Chung. *See Atkins*, 631 F.3d at 831-32; *Woodard*, 2024 WL 942629 at *2; *Blinken*, 717 F. Supp. 3d at 737.

Nor does the handful of new allegations added to the Amended Complaint concerning Mr. Chung remedy the Commission's failure to adequately allege substantial assistance. There are only three new substantive allegations about Mr. Chung in the Amended Complaint, all of which have to do with emails Mr. Chung allegedly sent or received "on the subject of the Releases" (Am. Compl. ¶ 269):

- "From April 27, 2021 to June 10, 2021, Chung sent at least eleven emails on the subject of the Releases."

- "Chung's emails regarding the Releases included a May 10, 2021 email string between Chung and Randy Larson, which began with an email from Randy Larson to Chung with the subject line: 'Approval for Settlement Agreement before I send out.'"

- "Randy Larson's May 10, 2021 email to Chung included an attachment entitled 'draft settlement.' "

(*Id.* ¶¶ 269-71.) But none of these new paragraphs alleges that Mr. Chung reviewed or approved the single "draft settlement" Randy Larson allegedly sent him, what language or provisions the draft settlement contained, or whether the "draft" version Mr. Chung allegedly received was the same as the final version that the Adviser Representatives sent to their clients. Most important, these new paragraphs do not allege that the "draft" of the single document Mr. Chung allegedly received contained any false or misleading statements or, if it did, that Mr. Chung knew of or recklessly failed to spot them. Nonetheless, the Commission evidently included these three new paragraphs to insinuate (without, however, actually alleging) that Mr. Chung was shown documents that contained false statements and failed to stop the Adviser Representatives from sending them to their clients.

But even if the Court were to read the new paragraphs in the light most favorable to the Commission and assume the existence of allegations the Commission failed to plead, they add nothing to the Commission's claims against Mr. Chung. At most, taken as true and drawing all possible inferences in the Commission's favor, the Amended Complaint alleges only that Mr. Chung received a document that contained false or misleading statements. But as Mr. Chung explained in his Motion to Dismiss the Commission's initial Complaint, in both the Northern District of Illinois and other federal jurisdictions mere "awareness and approval" of a primary violation is "insufficient to make out a claim for substantial assistance," which, in turn, is a necessary element of every aiding and abetting claim the Commission brings. (Dkt. No. 44 at 13-14 (citing cases from the Northern District of Illinois, Second Circuit and Southern District of New York)); *see also, e.g.*, *Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.*, 602 F.2d 478, 484

(2d Cir. 1979) (concluding that an alleged aider and abettor's "hiding" of unlawful activity "did not substantially assist" the primary securities fraud violation because "such activities were not the proximate cause" of the alleged harm, and that "[t]o the extent that [the aider and abettor] is held culpable because he 'recklessly' [f]ailed to discover" the primary violation "he did not achieve the status of an aider-abettor"); *Sec. and Exch. Comm'n v. Tecumseh Holdings Corp.*, No. 03 Civ. 5490 (SAS), 2009 WL 4975263, at \*4-\*5 (S.D.N.Y. Dec. 22, 2009) (rejecting Commission's claim that a lawyer for a broker-dealer aided and abetted the broker-dealer's securities law violations, despite the fact that the lawyer "knew of these violations," because "mere awareness and approval of [a] primary violation is insufficient to make out a claim for substantial assistance" of the primary violation); *Sec. and Exch. Comm'n v. Patel*, No. 07-cv-39-SM, 2008 WL 782465, at \*16-\*17 (D.N.H. Mar. 24, 2008) (granting defendant's motion to dismiss Commission's aiding and abetting claim based on the defendant's alleged "participat[ion] in negotiating and finalizing" false information included in written disclosures because "liability for aiding and abetting requires allegations of affirmative conduct . . . rather than mere awareness and approval"). Because the Commission has, for a second time, failed to adequately allege Mr. Chung's substantial assistance of the purported misstatements in the Adviser Representatives' settlement agreements, it has failed to allege an indispensable element of its first aiding and abetting claim against Mr. Chung, and the claim must therefore be dismissed.

## II. The Commission Failed to State a Claim Against Mr. Chung for Aiding and Abetting Violations of Section 206(4) of the Investment Advisers Act and Rule 206(4)-7 Thereunder.

The Commission's allegations about Mr. Chung's role in Arete Wealth Advisors' purported failure to "maintain adequate compliance policies and procedures and . . . conduct required annual reviews of the firm's compliance policies" in violation of Advisers Act Section 206(4) and Rule

206(4)-7 exhibit the same deficiencies as its allegations about his purported failure to discover other Defendants' concealed misstatements.[6] (Am. Compl. ¶ 14.) Most important, the Amended Complaint contains no allegations—as it must to withstand a motion to dismiss—that Mr. Chung recklessly disregarded or substantially assisted any other Defendant's alleged wrongdoing with respect to the firm's policies and procedures or compliance program. And the Commission's allegations about Arete Wealth Advisors' purported primary violations are, again, contradictory. As with its other claim against Mr. Chung, these deficiencies make it impossible for the Commission to satisfy its threshold pleading burden under Federal Rule of Civil Procedure 12(b)(6), or its much higher burden to adequately plead the elements of a claim for aiding and abetting violations of Section 206(4) of the Advisers Act and Rule 206(4)-7.

The section of the Amended Complaint that addresses Mr. Chung's alleged aiding and abetting of Arete Wealth Advisors' Rule 206(4)-7 violations contains only two statements—both conclusory—that allegedly support its claim: (1) Mr. Chung "did not conduct annual reviews of the adequacy of the firm's compliance policies and procedures," and (2) "failed to tailor the firm's compliance manual to accurately describe Arete's business operations." (*Id.* ¶¶ 313-14.) But none of the Commission's allegations about Mr. Chung's involvement in reviewing and updating Arete Wealth Advisors' policies and procedures substantiate these conclusions. Instead, the Amended Complaint directly contradicts them.[7]

---

[6] Read together, the versions of Section 206(4) of the Advisers Act and Rule 206(4)-7 in effect during the Commission's relevant period (Am. Compl. ¶ 1) required registered investment advisers to "(a) . . . [a]dopt and implement written policies and procedures reasonably designed to prevent violation . . . of the [Advisers] Act and" the Commission's rules; and "(b) . . . review, no less frequently than annually, the adequacy of the policies and procedures established pursuant to [Rule 206(4)-7] and the effectiveness of their implementation." 15 U.S.C. § 80b-6(4), 17 C.F.R. § 275.206(4)-7.

[7] The allegations supporting the Commission's aiding and abetting claim against Mr. Chung also mix up primary and aiding and abetting liability under Advisers Act Section 206(4) and Rule 206(4)-7. Both provisions apply to an "investment adviser" only, *see* 15 U.S.C. § 80b-6, 17 C.F.R. § 275.206(4)-7, *Nutmeg Grp., LLC*, 162 F. Supp. 3d at 772, which, in this case, the Commission alleges is Arete Wealth Advisors,

As an initial matter, the Amended Complaint fails to allege that Mr. Chung took any part whatsoever in creating or revising Arete's policies and procedures, and instead affirmatively alleges that those responsibilities were assumed by others. The Commission alleges that "[t]he firm's compliance policies and procedures originated from an outside consulting firm"—Mr. Chung did not draft them (*id*. ¶ 296)—and that the job of revising the firm's policies and procedures was done by a "senior director of compliance" at Arete Wealth Advisors—not Mr. Chung. (*Id*. ¶¶ 308-11.) By themselves, these allegations render the Commission's aiding and abetting claim inadequately pled because they establish that Mr. Chung had no role in creating the alleged inadequacies in Arete's written policies and procedures. *See, e.g.*, *Howard*, 376 F.3d at 1148-49 (rejecting Commission's aiding and abetting claim based on misstatements in documents where documents were drafted by someone other than the defendant); *Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d at 335-37 (the defendant did not substantially assist the creation of misstatements in the primary violator's Form 10-KSB because the defendant's "role in the preparation of the Form 10-KSB was very limited").

Moreover, the Commission's conclusory allegations that Mr. Chung "did not conduct annual reviews" of the firm's policies and procedures, and "failed to tailor the firm's compliance manual" (Am. Compl. ¶¶ 313-14) are contradicted by particularized allegations elsewhere in the Amended Complaint establishing that Mr. Chung did, in fact, participate in annual reviews aimed at revising the firm's policies and procedures to address concerns raised by the Commission. For example, the Commission affirmatively alleges that Mr. Chung wrote to the Commission's

---

LLC. (Am. Compl. ¶¶ 24, 374.) Even though the Commission concedes that Mr. Chung is not an "investment adviser" for the purposes of the Advisers Act (*id*. ¶ 28), the Amended Complaint nonetheless confusingly suggests that he was a *primary* violator of Section 206(4) and Rule 206(4)-7, which, per the text of those provisions, is impossible. (*Id*. ¶¶ 313, 314.) Just as the Commission misunderstands the mental state requirement for its aiding and abetting claims against Mr. Chung (*supra* at 7-10), it also misunderstands the difference between primary and aiding and abetting liability under the securities laws.

examination staff in December 2018 and told them that " 'Arete is in the process of reviewing and updating its Compliance manual, and will ensure it conducts annual reviews of its adequacy thereafter.' " (*Id.* ¶ 305.) The Commission also alleges that Mr. Chung told the Commission that " 'Arete is in the process of conducting a comprehensive review of its policies and procedures and will make all necessary amendments to its Compliance Manual to ensure that it is current and consistent with the Advisers Act.' " (*Id.* ¶ 307.) Given the total absence of any contrary allegations in the Amended Complaint refuting these statements, the only inference the Court can drawn from them is that Mr. Chung made the statements to the Commission because he believed them to be true. Nowhere in the Amended Complaint does the Commission in any way allege that these statements were false, or—as it must to survive a motion to dismiss—that Mr. Chung knew or recklessly disregarded the fact that they were false.

Instead, the Amended Complaint says just the opposite. The Commission alleges that in October 2020, Mr. Chung was expressly told in emails sent by the "senior director of compliance" who was responsible for updating Arete Wealth Advisors' policies and procedures that she was " 'finish[ing]' " the firm's " 'RIA [registered investment adviser] WSPs [Procedures],' " after which she intended to " 'push them out to the field' "—*i.e.*, to Arete Wealth Advisors' registered representatives. (*Id.* ¶ 309 (brackets in original).) She further asked Mr. Chung to " 'let me know your comments' " on the written policies and procedures, establishing that he participated in the firm's 2020 annual review process for the then-current version of that document. (*Id.*) The Commission also alleges that the following year, 2021, the same senior director of compliance again told Mr. Chung that she had created an " 'up to date version' " of Arete's " '[registered investment adviser] . . . procedures' " which she said she would eventually " 'roll[] out to the field.' " (*Id.* ¶ 310 (first brackets in original).) The same thing happened again the following year,

in 2022. According to the Amended Complaint, the senior director was again working to " 'address the Arete Wealth Advisors WSP's [Procedures]' " and, even more specifically, sought to " 'make time this week to address' " with Mr. Chung the revised draft, a copy of which the Commission alleges was " 'attached' " to the senior director's email to Mr. Chung. (*Id*. ¶ 311 (brackets in original).) These detailed allegations documenting the steps Arete Wealth Advisors and Mr. Chung took in 2020, 2021 and 2022 to review and update Arete Wealth Advisors' policies and procedures directly refute the Commission's conclusory allegations that between "December 2018 and May 2023, Arete Advisors and Mr. Chung did not conduct annual reviews of the adequacy of the firm's compliance policies and procedures" and "failed to tailor the firm's compliance manual." (*Id*. ¶¶ 313-14.) Contemporaneous emails quoted in the Amended Complaint show that they did.

But more problematic for the Commission's aiding and abetting claim, these allegations also refute any inference that Mr. Chung was "aware of" or "recklessly disregarded" any other Defendant's violation of Section 206(4) and Rule 206(4)-7, namely, Arete Wealth Advisor's alleged failure to conduct reviews of or update its policies and procedures, which is a necessary element of the Commission's claim. *Monetta Fin. Servs.*, 390 F.3d at 956; *Nutmeg Grp., LLC*, 162 F. Supp. 3d at 782. Nowhere among the Amended Complaint's few allegations concerning Mr. Chung's alleged role in reviewing or updating Arete Wealth Advisors' policies and procedures does the Commission allege that Mr. Chung was aware of any primary violator's failure to carry out those tasks. To the contrary, the Commission affirmatively alleges that Mr. Chung was told by the Arete employee the Commission admits was responsible for updating the firm's policies that she *was in fact doing so*—and doing so *annually*. (*Supra* at 21-23.) Accepting the Commission's own allegations as true for the purposes of Mr. Chung's Motion to Dismiss, the Amended Complaint

alleges that Mr. Chung was led to believe that Arete Wealth Advisors was satisfying its obligation to review and update the firm's policies and procedures.

It seems that the contradictory allegations the Commission offers to support its Rule 206(4)-7 claim stem from the Commission's basic misunderstand of its pleading burden for aiding and abetting claims, a mistake that runs throughout the Amended Complaint. It is not enough for the Commission to allege that Mr. Chung was negligent in not knowing that the "senior director of compliance" was not doing the job the Commission expressly alleges she told Mr. Chung she was doing. Nor (had the Commission actually alleged it, which it did not) is Mr. Chung's mere "awareness and approval" of Arete Wealth Advisors' purported failure to review and update its policies and procedures sufficient to allege substantial assistance on Mr. Chung's part.[8] (*See supra* at 15, 19; Dkt. No. 44 at 13-14.) The Commission must instead allege with particularity that "the aider and abettor generally was aware or knew that his or her actions were part of an overall course of conduct that was improper or illegal," *and* that "the aider and abettor substantially assisted the primary violation." *Monetta Fin. Servs.*, 390 F.3d at 956 (internal citations and quotations omitted); *see also Nutmeg Grp., LLC*, 162 F. Supp. 3d at 782 (same). Not only do the Commission's allegations concerning Mr. Chung fail to plead anything close to such knowledge or assistance, they plead just the opposite. Stated differently, the Commission has failed to meet its burden to adequately plead a claim for aiding and abetting violations of Advisers Act Section 206(4) and Rule 206(4)-7 for three independent reasons: (1) the Commission's allegations consist of nothing more than a "conclusory assertion that [Mr. Chung] engaged in" unlawful activity in connection

---

[8]     The Commission does not allege that Mr. Chung is *himself* liable for violations of Section 206(4) and Rule 206(4)-7 related to Arete Wealth Advisors' policies and procedures, because only an investment adviser (here, Arete Wealth Advisors) can be liable for such violations. (*Supra* at n.7.) Because Mr. Chung has never been an investment adviser he cannot, as a matter of law, have violated Section 206(4) and Rule 206(4)-7.

24

with updating Arete Wealth Advisors' policies and procedures, *Blinken*, 717 F. Supp. 3d at 744 (citing *Twombly*, 550 U.S. at 555); (2) the Commission has completely failed to allege that Mr. Chung "was aware or knew that his . . . actions were part of an overall course of conduct that was improper or illegal," *Monetta Fin. Servs.*, 390 F.3d at 956 (internal citations and quotations omitted); and (3) the Commission has not even tried to allege, much less adequately alleged, that Mr. Chung "proximately caused the harm to [any victim] on which the primary liability is predicated," *Nutmeg Grp., LLC*, 162 F. Supp. 3d at 786 (internal citations omitted). Any one of these three pleading deficiencies standing alone requires the Court to dismiss the Commission's second aiding and abetting claim against Mr. Chung.

## **CONCLUSION**

For the foregoing reasons Defendant UnBo (Bob) Chung respectfully requests that the Court (1) grant his Motion to Dismiss Plaintiff's Amended Complaint in its entirety, and (2) dismiss the Fourth and Seventh Counts of the Amended Complaint with prejudice insofar as they pertain to him.


Dated: June 9, 2025

                                 Respectfully submitted,

                                 *David Slovick*

                                 David S. Slovick
                                 Charlotte H. Underwood
                                 BARNES & THORNBURG LLP
                                 390 Madison Ave., 12th Floor
                                 New York, NY 10017
                                 dslovick@btlaw.com
                                 charlotte.underwood@btlaw.com

                                 *Attorneys for Defendant UnBo (Bob) Chung*

25